**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

HENRY BENITEZ,

                              Plaintiff,

            - v -                                    Civ. No. 9:04-CV-423
                                                          (NAM/RFT)
J. LOCASTRO, *Lt., et al.,*

                              Defendants.

**APPEARANCES:**                          **OF COUNSEL:**

HENRY BENITEZ
Plaintiff, *Pro Se*
97-A-2553
Upstate Correctional Facility
P.O. Box 2001
309 Bare Hill Road
Malone, N.Y. 12953

HON. ANDREW M. CUOMO                      SENTA B. SUIDA, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, N.Y. 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

   *Pro se* Plaintiff Henry Benitez filed this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging violations of his constitutional rights as guaranteed by the First, Eighth, and Fourteenth

Amendments.  Presently before the Court is a Motion for a Judgment on the Pleadings pursuant to

FED. R. CIV. P. 12(c) brought by thirty-eight (38)[1] of the forty-seven (47) Defendants, (Dkt. No. 94),

---

[1] The thirty-nine (38) Defendants on whose behalf the Motion for a Judgment on the Pleadings is brought are:
Amberman, Baranska, Burge, Chilson, Christopher, Colon, Eagen, Easterbrook, Kessel, Kneeland, Konecny, Lennox,
(continued...)

as well as Plaintiff's Motion for Sanctions pursuant to FED. R. CIV. P. 37 ( Dkt. No. 97). For the reasons that follow, it is recommended that Plaintiff's Motion for Sanctions be **denied**, and that Defendants' Motion for Judgment on the Pleadings be **granted in part** and **denied in part**.

## I. MOTION FOR SANCTIONS

In an attempt to ascertain the names of the seven John Doe Defendants, Plaintiff served Defendants' counsel with his First Request for Production of Documents in July 2005, and thereafter filed his First Motion to Compel production of those documents on August 8, 2005. Dkt. No. 65. On January 25, 2006, the Court denied that Motion as moot based on a determination that the Defendants had substantially complied with Plaintiff's discovery requests. Dkt. No. 82. Plaintiff filed a Motion for Reconsideration of that Order, asserting several objections to the Defendants' Discovery Response. Dkt. No. 68. Plaintiff subsequently filed Second and Third Motions to Compel, demanding that the Defendants respond to his Interrogatories to Discover Identities of Defendants and Request to Enter Upon Property for Inspection and Photographing of Property. Dkt. Nos. 79 & 80.

The Court addressed Plaintiff's Motion for Reconsideration and his Second and Third Motions to Compel in a August 29, 2006 *omnibus* Order. Dkt. No. 88. With respect to the Motion for Reconsideration, the Court stated that "insofar as Plaintiff . . . seeks an order . . . directing Defendants to provide [him] with copies of the responsive documents at no cost to Plaintiff, his Motion must be denied." The Court also noted that the "Defendants must make the documents identified as responsive to Plaintiff's discovery requests available to Plaintiff for his review." Dkt.

---

[1](...continued)

Leonello, Loomis, Maccucci, Martens, McNamara, Melindez, Meyers, Lt. Miller, Murley, Parmiter, Porten, Quinn, Roux, Nurse R. Smith, Sgt. Smith, Wilkinson, Yorkey; and unserved Defendants C.O. Miller, C.O.Smith, and John Does #1-7. Dkt. No. 94-2, Mem. of Law, at p. 7.

No. 88 at p. 5.  We granted Plaintiff's Second and Third Motions to Compel, directing the Defendants to serve written responses to Plaintiff's Interrogatories to Discover Identities of Defendants and Request to Enter Upon Property for Inspection and Photographing of Property.  Dkt. No. 88.

On October 9, 2006, Plaintiff filed a Motion for Sanctions against Defendants for failure to comply with the Court's August 29, 2006 Order.  Dkt. No. 89.  On June 12, 2007, the Court denied that Motion for Sanctions without prejudice, but ordered Defendants to comply with the August Order within 30 days.  Dkt. No. 91.  Defendants filed a Status Report on August 3, 2007, stating that Plaintiff was served with their Response to his Request to Enter Upon Property for Inspection and Photographing of Property and Objects, and that as part of that Response, six videotapes were forwarded to the administration at Upstate Correctional Facility ("Upstate") for Plaintiff's viewing. Dkt. No. 92.

On October 31, 2007, Plaintiff filed the instant Motion for Sanctions, alleging that Defendants have not provided him with the opportunity to review the documents produced in their Response to his First Request for Production of Documents,[2] nor the opportunity to view the videotapes referenced in Defendants' August 3rd Status Report.  Dkt. No. 97.  Plaintiff asserts that this inaction on the Defendants' part has prevented him from learning the full names of Defendants

---

[2] We note that Plaintiff's Motion for Sanctions actually asserts that to date, he has not been provided "a *response* to his First Request for Production of Documents[.]" Dkt. No. 97 at ¶ 26 (emphasis added). The record belies that claim. Plaintiff objected to the sufficiency of the Defendants' Response to his First Request for Production of Documents in his Motion for Reconsideration (Dkt. No. 83) of the Court's January 25, 2006 Order denying his first Motion to Compel (Dkt. No. 82). Thus, we assume Plaintiff is asserting that he has not been provided the opportunity to review the Defendants' responsive documents.

Correction Officer (C.O.) Smith[3] and John Does # 1-7.  In his Motion for Sanctions, Plaintiff seeks a default judgment against the Defendants that have filed an Answer to the Complaint.  *Id*. at p. 10.

Defendants respond that Plaintiff was provided an opportunity to review their responsive documents to his First Request for Production of Documents at Upstate on December 11, 2007, but that he refused to view them.  Dkt. No. 100 at ¶ 5.  Defendants have attached to their Response to Plaintiff's Motion for Sanctions two blank Acknowledgment Forms with the notation "Refused to review or sign," and an unidentifiable signature below said notation.  *Id.*, Exs. A & B, dated Dec. 11, 2007.  In his Reply to Defendants' Response, Plaintiff contends that he was never given the opportunity to review such documents and at no point refused to do so.  Dkt. No. 103 at ¶ 4.

With respect to the videotapes, Defendants assert that Plaintiff had the opportunity to view them, and have attached to their Response an Acknowledgment Form signed by Henry Benitez, acknowledging that he viewed six videotapes at Upstate on December 11, 2007.  Dkt. No. 100, Ex. C.  Plaintiff admits in his Reply that he viewed the videotapes.[4]  Dkt. No. 103 at ¶ 3.

Thus, there is a disagreement as to whether Plaintiff has been afforded the opportunity to review the documents produced in response to his First Request for Production of Documents.  In our August 29, 2006 Order, we directed that the "Defendants must make the documents identified as responsive to Plaintiff's discovery requests available to Plaintiff for his review," though we noted that Plaintiff must pay for any copies of said documents.  Dkt. No. 88 at p. 5.  The Defendants' duty to make these documents available to Plaintiff is ongoing, and therefore, regardless of whether

---

[3] C.O. Smith is one of three "Smith" Defendants in this action, along with Sergeant (Sgt.) Smith and Nurse R. Smith.  C.O. Smith is named "R. Smith" on the docket, however, in order to keep these Smiths discrete, we will refer to him as C.O. Smith.

[4] Plaintiff also makes a new allegation that he was not allowed to take notes while viewing the videos.  Dkt. No. 103 at ¶¶ 3 & 5.

Plaintiff refused to view the documents on December 11, 2007, he is still entitled to review them and request that copies be made at his expense.

Thus, Defendants are ordered to continue to make their responsive documents available for Plaintiff to review and to copy at his own expense. However, Plaintiff's Motion for Sanctions in the form of a default judgment in his favor is **denied**.

## II. MOTION FOR A JUDGMENT ON THE PLEADINGS

### A. Standard of Review

FED. R. CIV. P. 12(c) provides, in pertinent part: "After the pleadings are closed . . . any party may move for judgment on the pleadings." "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell. Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Furthermore, "the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999); *see also Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citations omitted). Additionally, "[i]n assessing the legal sufficiency of a claim [under 12(b)(6)], the court may consider those facts alleged in the complaint, documents attached as an exhibit thereto or incorporated by reference . . . and documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference." *Green v. New York State Dep't of Corr. Servs.*, 2003 WL 22169779, at *1 (N.D.N.Y. Aug. 27, 2003) (internal quotation marks and citations omitted) (alterations in original). A "dismissal on the pleadings is

never warranted unless the plaintiff's allegations are doomed to fail under any available legal theory." *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005).

## B. Unserved Defendants and Defendant Officer Considine

Under FED. R. CIV. P. 4(c)(1), a plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[5] Failure to properly serve any defendant in accordance with the Federal Rules will cause the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

Defendants contend that the seven (7) John Doe Defendants named in the Amended Complaint, along with C.O.s Smith and Miller, should be dismissed for failure to provide service of process. Plaintiff responds that the Defendants' failure to comply with the Court's June 12, 2007 Order directing them to respond to Plaintiff's outstanding discovery requests, (Dkt. No. 91), has prevented him from ascertaining the identities of the John Does and C.O.s Miller and Smith, (Dkt. No. 104 at p. 2).

The June 12, 2007 Order directed compliance with our August 29, 2006 Order. The August Order addressed Plaintiff's Motions to Compel responses to his (1) First Request for Production of Documents, (2) Request to Enter Upon Property For Inspection and Photographing of Property and Objects, and (3) Interrogatories to Discover Identities of Defendants. Dkt. No. 88. As to the first, we have already noted that there is a dispute as to whether Plaintiff has been afforded the opportunity to review the Defendants' responsive documents. With respect to the second, Plaintiff has acknowledged that he was served with the Defendants' Response to his Request to Enter Upon

---

[5] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

Property For Inspection and Photographing of Property and Objects.  Dkt. No. 97 at ¶ 23.  Oddly, neither party has addressed in their respective Motions presently before this Court whether the Defendants have responded to Plaintiff's Interrogatories to Discover Identities of Defendants,[6] nor whether Plaintiff has had the opportunity to review any such response, though Plaintiff has made the general assertion that Defendants have not complied with this Court's June 12, 2007 Order.[7] Dkt. No. 100 at p. 2.

Thus, questions exist as to whether Plaintiff has indeed been provided the opportunity to review the Defendants' responsive documents to his First Request for Production of Documents and whether the Defendants have complied with this Court's August 29, 2006 and June 12, 2007 Orders to respond to Plaintiff's Interrogatories to Discover the Identities of Defendants.  Defendants' Motion for Judgment on the Pleadings with respect to these unserved Defendants is therefore **denied without prejudice** at this juncture.[8]

As we have already stated, Defendants are under a continuing obligation to abide by this Court's previous Orders mandating that they respond to Plaintiff's discovery requests and provide him with the opportunity to review those responses and any documentary evidence attached thereto.

---

[6] These Interrogatories were directed only to Defendant M. Bradt, identified by Plaintiff as the Deputy Superintendent at Auburn Correctional Facility.  Dkt. No. 5 at p. 7.  The Interrogatories seek to identify the corrections officers involved in incidents that allegedly occurred on January 28, July 9, July 11, and August 20, 2002, in the Auburn Special Housing Unit.  The dates identified in these Interrogatories correspond with Plaintiff's claims against John Does # 1-7 regarding incidents that allegedly occurred on July 9 and July 11, 2002.  *See* Dkt. No. 5, Am. Compl. at ¶¶ 26-35 & 45.

[7] Plaintiff's claim in that respect is at least partly false.  The June 12, 2007 Order directed Defendants to comply with the August 29, 2006 Order, which directed them to respond to Plaintiff's outstanding discovery requests, namely, his Interrogatories to Discover Identities of Defendants and his Request to Enter Upon the Property for Inspection and Photographing of Property, which were the subjects of his Second and Third Motions to Compel, respectively.  *See* Dkt. No. 88 at pp. 6-7.  Plaintiff has acknowledged receipt of the Defendants' Response to his Request to Enter Upon the Property for Inspection and Photographing of Property.  Dkt. No. 97 at ¶ 24 (stating he received that Response on August 6, 2007.).

[8] However, we recommend C.O. Miller's dismissal for other reasons.  *See infra* Part II.C.2.

To the extent that the Defendants have thus far not responded to any of Plaintiff's discovery requests, including his Interrogatories to Discover the Identities of Defendants, they are ordered to do so **within thirty (30) days** of the date this Report-Recommendation and Order is filed with the Clerk.  Plaintiff is reminded that he is not entitled to free copies of any document the Defendants produce, only the opportunity to review them.  The Dispositive Motion deadline is extended to December 28, 2008.

Defendants also argue that Defendant Considine should be dismissed from the action because Plaintiff did not name him in his Amended Complaint.  Dkt. No. 5.  However, Considine is a named Defendant on the docket, the Answer, and the Amended Answer, and has been served with process. Dkt. No. 39.  Plaintiff made specific allegations against Considine in his Amended Complaint, Dkt. No. 5-3 at ¶¶ 57-61, and states that he intended to name Considine therein, Dkt. No. 104 at p. 4. Because Considine has been put on notice as to Plaintiff's charges against him, and was clearly intended by Plaintiff to be a named Defendant, we recommend that Defendants' Motion to Dismiss be **denied** in that respect.

### C.  Eighth Amendment Claims

Plaintiff makes several claims that his rights under the Eighth Amendment were violated. We consider these claims *seriatim*.

#### 1. *Harassment*

Plaintiff claims that on several different dates, dirty mop water was thrown on him by the following Defendants: Considine, Crozier, and Martens on August 8, 2002; Crozier on August 13 and 20, 2002; Defendants G. Maccucci and Chilson on August 17 & 24, 2002; Sergeant (Sgt.) Smith and G. Maccucci on August 20, 2002; Maccucci and Martens on August 29, 2002; Defendant Roux

on August 21, 2002; Defendant Leonello on August 26, 2002; and M. Kessel on August 11, 17, and 30, 2002.  Am. Compl. at ¶¶ 37, 57, 62-65, 76, & 79.  Plaintiff also claims Defendant Leonello "shut off the electricity and the sink and toilet['s] running water" in his cell, and that Porten and McNamara overflowed his toilet.  *Id*. at ¶¶ 27 & 78.

To validly assert a violation of the Eighth Amendment through the use of excessive force, an inmate must prove two components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated "contemporary standards of decency."  *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999) (internal quotations omitted) (citing *Hudson v. McMillan*, 503 U.S. 1, 8 (1992)).

Regarding the objective element of our Eighth Amendment analysis, " a *de minimis* use of force will rarely suffice to state a constitutional claim[.]" *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993).  In that respect, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (quoted in *Hudson v. McMillian*, 503 U.S. at 10).  Furthermore, "a claim under 42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse."  *Govan v. Campbell*, 289 F. Supp. 2d 289, 300 (N.D.N.Y. 2003).

The allegation that officers threw dirty mop water into Plaintiff's cell and overflowed his toilet, even assuming they are true, constitute no more than *de minimis* actions best described as harassment, not cruel and unusual punishment, and therefore fall short of meeting the objective component of the Eighth Amendment standard.  *See, e.g., McFadden v. Solfaro*, 1998 WL 199923 (S.D.N.Y. Apr. 23, 1998) (prisoner's claim that a corrections officer regularly threw coffee, juice, and water into his cell was not a triable cause of action under the Eighth Amendment); *see also*

*Samuels v. Hawkins*, 157 F.3d 557 (8th Cir. 1998) (prison guard's actions of throwing a liquid at plaintiff that did not harm him in any way were *de minimis*).  Furthermore, Plaintiff's assertion that Leonello shut off the electricity and running water on August 16, 2002, without any indication as to how long those alleged deprivations lasted, is conclusory and should be **dismissed**.  *Jemzura v. Public Service Com'n*, 961 F. Supp. 406, 413 (N.D.N.Y. 1997) (citing *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987) for the proposition that "[e]ven a pro se Complaint must be dismissed if it contains only conclusory, vague or general allegations") (internal quotations omitted).  To the extent Plaintiff is asserting he was deprived of electricity and running water only on August 16, 2002, that allegation fails to state a claim under the objective prong of the Eighth Amendment and should be **dismissed**.  *See, e.g., McFadden v. Solfaro*, 1998 WL 199923, at *13 (S.D.N.Y. Apr. 23, 1998) (claim that water was shut off for two three-day stints did not trigger a constitutional controversy).

Plaintiff also claims that on July 9, 2002, Defendants Chilson, Colon, Considine, Porten, McNamara, and Smith,

> threw urine and dirty mop water on Benitez through an opening of the cell's observation window and through the cell's air vent on the ceiling.  These defendants then (a) rapidly and repetitiously struck the metal sheet cover of the cell's observation window with batons and large metal objects; (b) repeatedly switched on and off the tubular fluorescent light of the cell; (c) repeatedly overflowed the toilet and sink in the cell; (d) repeatedly made death threats to Benitez; and (e) willfully and wantonly denied Benitez requested medical care and treatment, clothes, clean mats, bed linen, and toilet tissue.

Am. Compl. at ¶ 37.

As previously discussed, Plaintiff's claims with respect to the mop water, threats, and other harassments do not state viable claims under the Eighth Amendment and should therefore be **dismissed**.  With respect to Plaintiff's claims concerning the denial of medical care, clothes, clean

*-10-*

mats, bed linen, and toilet tissue, he has failed to plead enough facts that would enable the Defendants to respond thereto. Plaintiff does not identify what his medical needs were or what medical treatment he was denied, nor does he describe the circumstances of the other alleged deprivations, how long they lasted, or how these Defendants were involved. Thus, these claims are conclusory and should be **dismissed**. *Jemzura v. Public Service Com'n*, 961 F. Supp. at 413.

### 2. *Denial of Meals*

Plaintiff claims that on January 28, 2002, Defendants C.O. Smith and Barnska denied him breakfast and lunch, respectively, and that Defendants Wilkinson, Chilson, Yorkey, Murley, Easterbrook, Loomis, Quinn, Christopher, Roux, and Meyers either denied him a meal on one or more occasion, or approved the denial of a meal on one or more occasion during the month of August 2002. Am. Compl. at ¶¶ 18, 22-23, 68-75, 77, & 80. With exception to his claims concerning January 28th, Plaintiff does not allege he was denied more than one meal on any one day.[9]

The Second Circuit has held that "under certain circumstances a *substantial deprivation* of food may well be recognized as being of constitutional dimension." *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (emphasis added) (citation omitted). Such a substantial deprivation creates an Eighth Amendment claim if it "presents an immediate danger to the inmate's health or well-being." *Chapdelaine. v. Keller*, 1998 WL 357350, at *12 (N.D.N.Y. Apr. 16, 1998) (citations omitted).

It has been held in this district that "[w]hen a prison guard deprives a prisoner of *two* of the

---

[9] Furthermore, in several instances, it is unclear whether Plaintiff is claiming he was not given a meal at all, or just not provided a special "restricted diet" meal. *See* Am. Compl. at ¶¶ 68-69, 71, 74-75, & 80. We presume Plaintiff is asserting he was not fed a meal at all on those dates.

regularly three meals served each day, the objective prong of the Eighth Amendment may be met if the defendants do not satisfy their burden of showing that the one meal served is nutritionally adequate." *Beckford v. Portuondo*, 151 F. Supp. 2d 204, 213 (N.D.N.Y. 2001) (emphasis added) (citing *Cunningham v. Jones*, 567 F.2d 653, 660 (6th Cir. 1977)).  Plaintiff has alleged that on January 28, 2002, he was wantonly deprived breakfast and lunch.  Am. Compl. at ¶¶ 18 & 22. Therefore, he has stated a valid claim under both prongs of the Eighth Amendment standard and should not be dismissed at this stage of the litigation.

However, Plaintiff's remaining meal deprivation claims do not involve more than one missed meal on any given day.  Furthermore, Plaintiff does not allege that he was deprived of a substantial amount of food on those days.  Am. Compl. at ¶¶ 23, 68-75, 77, & 80.  Nor does Plaintiff allege that the overall amount of food he received on those dates was nutritionally inadequate, or that his health was otherwise placed in jeopardy as a consequence of those deprivations.  Plaintiff has therefore failed to state a claim under the objective prong of the Eighth Amendment standard, and it is therefore recommended that this claim be **dismissed**.  *See McLeod v. Scully*, 1984 WL 692, at *2 (S.D.N.Y. July 30, 1984) (provision of two meals per day for eight to ten consecutive days during a lockdown did not constitute an Eighth Amendment violation); *cf. Williams v. Coughlin*, 875 F. Supp. 1004 (W.D.N.Y. 1995) (allegation of deprivation of five *consecutive* meals over two days created a question of material fact).

### 3. *Deprivation Orders*

Plaintiff claims that Defendants Bradt and Chilson either approved or issued unspecified deprivation orders causing Plaintiff to be without the following items and services from July 9 through July 14, 2002: all in-cell property, pen, bed sheets, mattress, toilet tissue, running water,

showers, exercise periods, and law library services.  Am. Compl. at ¶ 51.  Plaintiff also claims that from July 14 through July 25, 2002, and from July 25 through August 8, 2002, Defendants Bradt, Chilson, and Martens approved or issued more unspecified orders depriving him of the same items and services listed above.[10]  *Id*. at ¶¶ 53 & 55.

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

Although Plaintiff has failed to discuss why the alleged deprivation orders were imposed, he has stated that he was willfully and wantonly deprived of, *inter alia*, running water, toilet tissue, showers, and bedding for a period of nearly one month.  Thus, notwithstanding the lack of factual allegations regarding the circumstances of the deprivation orders, Plaintiff has stated that he was deliberately denied the "minimal civilized measure of life's necessities."  *See, e.g., Bellezza v. Fischer,* 2006 WL 3019760, at *4 (S.D.N.Y. Oct. 24, 2006) ("Water that is suitable for drinking and bathing is undeniably one of 'life's necessities,' and . . . the Eighth Amendment therefore requires that it be supplied to inmates."); *cf. Barnes v. Craft*, 2007 WL 1017307, at *12 (N.D.N.Y. Mar. 30, 2007) (dismissing Eighth Amendment claim, stating that "[c]onspicuously missing from Plaintiff's . . . Complaint are any allegation that . . . he was denied food, clothing, bedding, heat, running water, showers, toiletries[.]").  Therefore, Plaintiff has presented a facially valid Eighth Amendment claim, and it is recommended that the Defendants' Motion be **denied** in that respect.

---

[10] In addition to the items listed, Plaintiff asserts he was denied "a water bucket" from July 25 though August 8, 2002.  Am. Compl. at ¶ 55.

4. *Medical Indifference Claims*

To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). The first prong is an objective standard and considers whether the medical condition is sufficiently serious. The Second Circuit has stated that a medical need is serious if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Hathaway I*, 37 F.3d at 66). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d at 702 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. 294, 301-03 (1991); *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer*). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v.*

*Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

Plaintiff claims that on July 2, 2002, Defendant Lennox ignored his complaints about an injury to his head caused by inadequate air flow in his cell.  Am. Compl. at ¶ 25.  Plaintiff also claims that on August 20, 2002, "Maccucci willfully and wantonly refused to allow Dr. Graceffo to examine [Plaintiff's] wrist injuries without handcuffs," and then refused to allow a nurse to examine his blood pressure.  *Id*. at ¶ 63. Plaintiff has not alleged he was suffering from a serious medical condition in either instance.  Rather, he states generally that he suffered from a "head injury" and "wrist injuries."[11]  Plaintiff has not described the circumstances of Lennox's alleged denial of medical care, nor the duration of that denial.  Finally, he has not asserted what harm, if any, resulted from Maccucci's refusal to take off his handcuffs and allow a nurse to take his blood pressure.  Therefore it is recommended that these claims be **dismissed**.

Plaintiff also claims that "[f]rom September 2002 to June 2004, Defendants M. Melindez and E. Amberman willfully ignored [Plaintiff's] repeated requests for psychiatric care and treatment" for severe cramps in his stomach and pain in his wrists, legs, and ankles, for auto immune hypothyroidism, for a cold and fever, and for severe headaches and emotional distress.  Am. Compl. at ¶¶ 84-85.  Here again, Plaintiff does not allege the circumstances or dates of Melindez and Amberman's alleged repeated denials of medical care.  Instead, Plaintiff asserts in conclusory fashion that Melindez and Amberman denied him medial care for a laundry list of physical and mental ailments over a period of almost two years.  Therefore, it is recommended that these claims

---

[11] With respect to the alleged wrist injuries, Plaintiff states that on several dates *after* August 20, 2002, his shackles and handcuffs were applied too tight and he suffered nerve damage as a consequence. Am. Compl. at ¶¶ 59-61. He also asserts that on August 17, 2002, he suffered nerve damage to his right ankle.  *Id*. at ¶ 58. Defendants have not challenged those allegations in the present Motion.

be **dismissed**.  *See Jemzura v. Public Service Com'n,* 961 F. Supp. at 413.

### D.  Retaliation Claims

The Second Circuit has stated that courts must approach prisoner retaliation claims "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official---even those otherwise not rising to the level of a constitutional violation---can be characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983); *Franco v. Kelly*, 854 F.2d 584, 590 (2d Cir. 1988)).

In order to prevail on a retaliation claim, a plaintiff bears the burden to prove, "first, that he engaged in constitutionally protected conduct and, second, that the conduct was a substantial or motivating factor for the adverse actions taken by prison officials."  *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted).  Thus, there must be a "causal connection between the protected speech and the adverse action."  *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted).

#### 1.  *Grievances*

Plaintiff claims that from August 8, 2002 through September 12, 2002, Defendant Parmiter refused to file several of his Grievances in retaliation for a Grievance Plaintiff had previously filed against her.[12]  *Id.* at ¶ 86. "[R]etaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."  *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)

---

[12] We consider whether a claim of failure to file a grievance, without more, states a valid claim under § 1983 in Part II.E.3.

*-16-*

(citing *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)).  Thus, Plaintiff has alleged he was involved in a constitutionally protected conduct.

However, Plaintiff has failed to plead sufficient facts to allege a causal connection between the alleged adverse action and his protected conduct.  Notably, there is no allegation as to when Plaintiff filed the Grievance that was the cause of the alleged retaliation.  *See Dawes v. Walker*, 239 F.3d at 492 (finding that plaintiff's failure "to set forth a time frame for the alleged events . . . precludes inference of a causal relationship.") (citation omitted).  Also, Plaintiff fails to allege how, or if, that Grievance was ultimately resolved.  In sum, this claim is conclusory and should be **dismissed**.

### 2. *Harassment/Denial of Meals*

Plaintiff claims that on August 8, 2002, Considine, Crozier, and Martens "willfully and wantonly threw dirty mop water on Benitez . . . in retaliation for his having complained on that same day" to an investigator employed by the New York State Inspector General about many of the allegations brought in his Amended Complaint.  Am. Compl. at ¶ 57.  Plaintiff also claims that on "August 26, 2002, Defendant Leonello wantonly threw dirty mop water" on him in retaliation for a Grievance Plaintiff filed against him earlier that month.  *Id*. at ¶ 79.  Finally, Plaintiff claims that on January 28, 2002, C.O. Smith denied him breakfast in retaliation for complaining about a plexiglass shield on his cell bars.  *Id*. at ¶ 22.

These claims are also conclusory.  As to Plaintiff's claims about mop water and a denied meal, he does not allege the form or circumstances of his "complaints" to the investigator and C.O. Smith, respectively.  Regarding his claim against Leonello, Plaintiff does not identify the nature of the Grievance he allegedly filed against Leonello.  In none of these cases does Plaintiff provide any

factual allegations to support a causal connection between the alleged adverse actions and Plaintiff's conduct. *See Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (stating that retaliation claims "must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms.") (internal quotation marks and citation omitted). Therefore, it is recommended that these claims be **dismissed**.[13]

### 3. *False Misbehavior Report*

Plaintiff claims that on January 27, 2002, Defendant J. Wilkinson filed a false Misbehavior Report against him and denied Plaintiff his evening meal and shower on that date in retaliation for Plaintiff's complaints to him about the conditions in his cell.[14] Am. Compl. at ¶ 18. Plaintiff has failed to adequately allege that he was involved in constitutionally protected conduct as he does not define the form, date, or circumstances of his complaints to Wilkinson. Nor does Plaintiff allege any facts that could lead to an inference of a causal connection between his conduct and the alleged adverse actions. Therefore, it is recommended that these claims be **dismissed.**

### E. Other Claims

#### 1. *Comments and Threats*

Plaintiff claims that on July 9, 2002, Defendants Chilson, Colon, Considine, Martens, Porten, McNamara, and Smith threatened him. Am. Compl. at ¶¶ 27 & 37. "[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and

---

[13] This recommendation is without prejudice to Plaintiff's Eighth Amendment claim against C.O. Smith regarding the deprivation of meals on January 28, 2002. *See supra* Part II.C.2.

[14] We consider whether the filing of a false misbehavior report itself is a constitutional violation in Part II.E.2, *supra*.

therefore is not actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at

*3 (N.D.N.Y. June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y.

1998)).  Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting

*Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

 Thus, this claim should be **dismissed**.

### 2. *False Reports/Medical Entries*

 Plaintiff alleges Defendants Wilkinson, McNamara, and Konecny filed false Misbehavior

Reports against him and that Defendant Lieutenant (Lt.) Miller wrote a false memo about the

availability of a video tape for a Disciplinary Hearing.  Am. Compl. at ¶¶ 3, 18, 27, & 40.  Plaintiff

also alleges that Defendant Martens filed a Misbehavior Report against him, though he does not

allege that said Misbehavior Report was falsified or otherwise improper.  *Id*. at ¶ 26.  Finally,

Plaintiff alleges that Defendant Nurses Lennox and Smith wrote false statements in his medical

record. *Id*. at ¶¶ 25 & 32.

 There is "no general constitutional right to be free from being falsely accused in a

misbehavior report."[15] *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v.

Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Gill v. Riddick*, 2005 WL 755745, at *7

(N.D.N.Y. Mar. 31, 2005).  Therefore, Plaintiff's claims that false Misbehavior Reports were filed

against him should be **dismissed** to the extent they are raised as constitutional violations in and of

themselves.[16]  Also, Plaintiff's allegation that Martens filed a Misbehavior Report against him,

---

[15] However, inmates may have a valid cause of action where a false misbehavior report is filed in retaliation for the exercise of a constitutional right. *See, e.g., Gill v. Riddick,* 2005 WL 755745, at *7; *see also supra* Part II.D.3.

[16] Plaintiff's claim against Lt. Miller concerns the availability of a video during a Disciplinary Hearing. Defendants have not challenged the viability of the underlying due process claim, and therefore, Plaintiff's claim against
(continued...)

*-19-*

without more, does not state a valid claim for relief and should be **dismissed**.  Finally, Plaintiff's

claims that Defendants Lennox and Smith falsified his medical records should also be **dismissed**.[17]

*See Diaz v. Goord*, 2006 U.S. Dist. LEXIS 14309, at *20 (W.D.N.Y. Mar. 20, 2006) (allegation of

false medical entries did not state a valid claim).

### 3.  *Grievances*

Plaintiff claims that Parmiter prevented him from filing a Grievance "in order to prevent him

from suing the defendants[,]" and that Parmiter refused to allow him to appeal another Grievance

he filed.[18]  Am. Compl. at ¶¶ 13 & 21.  In *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988), the Second

Circuit emphasized that inmates "must be permit[ted] free and uninhibited access . . . to both

*administrative and judicial* forums for the purpose of seeking redress of grievances against state

officers."  854 F.2d at 589 (alterations in original) (internal quotation marks and citations omitted).

Notwithstanding some recent District Court caselaw suggesting otherwise, the Second Circuit in

*Franco* was clearly placing a prisoner's right of redress of *administrative* grievances on par with a

prisoner's right to seek redress in *judicial forums* when it held that "[l]ike the right of access to the

courts, the right to petition is substantive rather than procedural and therefore 'cannot be obstructed

regardless of the procedural means applied.'"  *Id*. (quoting *Morello v. James*, 810 F.2d 344, 347 (2d

Cir. 1987) and further noting that "intentional obstruction of a prisoner's right to seek redress of

---

[16](...continued)
Miller should be dismissed only to the extent he is alleging a constitutional violation stemming from Miller's act of writing a false memo, and without prejudice to Plaintiff's claim that he was wrongly denied documentary evidence at the Disciplinary Hearing.

[17] Plaintiff also alleges that Nurse Smith failed to provide him medicine while he was experiencing extreme pain *See* Am. Compl. at ¶ 32.  That claim has not been addressed by the Defendants, and it is not recommended for dismissal.

[18] Plaintiff's retaliation claims regarding his thwarted attempts to file Grievances are considered above in Part II.D.1.

grievances is precisely the sort of oppression that . . . section 1983 [is] intended to remedy"); *cf.*
*Harnett v. Barr*, 538 F. Supp. 2d 511 (N.D.N.Y. 2008) (indicating that while prisoners have a
constitutional right to petition the government for redress of grievances, there is no duty incumbent
upon any state to provide an administrative grievance procedure for prisoners, and thus, "[n]either
a state's violation of those procedures, nor the failure to enforce them gives rise to a claim under
section 1983."); *contra Johnson v. Barney*, 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007)
(stating that obstructing the filing of a grievance is not tantamount to obstructing an inmate's
constitutional right to access the courts). Because the Second Circuit has determined this right to
petition a substantive, rather than procedural, right, the Court is bound to analyze Plaintiff's claim
as a First Amendment right to access the courts, and not a procedural due process violation.

In this regard, it is well established that "prisoners have a constitutional right to access to the
courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish standing for a claim for denial
of right of access, an inmate must show that he has suffered an actual injury traceable to the
challenged conduct of prison officials – that is, that a "nonfrivolous legal claim had been frustrated
or was being impeded" due to the actions of prison officials. *Lewis v. Casey*, 518 U.S. 343, 353
(1996). Benitez has failed to allege that Parmiter's alleged refusal to process his grievance(s)
resulted in some prejudice to Plaintiff filing a nonfrivolous legal action. Thus, to the extent Benitez
claims his substantive constitutional right of access to the courts has been violated, such claim
should be **dismissed**.

### F.  Personal Involvement/Supervisory Liability

The Second Circuit has held that "personal involvement of defendants in alleged
constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*,

21 F.3d 496, 501 (2d Cir. 1994) (citations omitted).  Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement. Therefore, a prison official may not be found liable for a constitutional violation merely because of the acts of those under his control."  *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted).

Nevertheless, if a plaintiff seeks to bring a § 1983 action for supervisory liability, liability on the part of the supervisor may exist

> in one or more of the following ways: 1) actual direct participation in the constitutional violation, 2) failure to remedy a wrong after being informed through a report or appeal, 3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, 4) grossly negligent supervision of subordinates who committed a violation, or 5) failure to act on information indicating that unconstitutional acts were occurring.

*Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003) (citing *Colon v. Coughlin*, 58 F.3d at 873) (further citations omitted).

In this case, Plaintiff alleges that Burge reviewed Grievances he filed on January 26 and 27, 2002, and that Eagen reviewed the same January 26th Grievance; that he complained to Defendants Kneeland and Burge about injuries he sustained on July 9, 2002; and that Burge and Sgt. Smith approved of Defendant Roux's alleged improper act of throwing dirty mop water on Plaintiff on August 21, 2002.[19]  Am. Compl. at ¶¶ 16-17, 20, 38, & 76.  Plaintiff alleges that in each instance these Defendants failed to remedy the alleged constitutional violations that occurred.

---

[19] Defendants have not addressed Plaintiff's claims that Defendants Burge, Kneeland, Rourke, Gummerson, and Wolczyk approved and upheld the imposition of the deprivation orders discussed above in Part II.C(3).  *See* Am. Compl.at ¶¶ 51-56.  Because we have recommended that Plaintiff's underlying claims regarding the alleged deprivation orders not be dismissed, we do not recommend that these supervisory claims be dismissed.

We have already recommended dismissal of Plaintiff's claims against Roux for his alleged improper act of throwing mop water on Plaintiff. *See supra* Part II.C(1). The subject matter of Plaintiff's January 27, 2002 Grievance was Wilkinson's alleged filing of a false Misbehavior Report, a claim we have already recommended for dismissal. *See supra* Part II.E(2). Therefore, Plaintiff's supervisory liability claims against Burge and Sgt. Smith should be **dismissed** with respect to those allegations.

The subject matter of Plaintiff's January 26, 2002 Grievance was the conditions of his confinement and injuries he allegedly suffered as a consequence. Am. Compl. at ¶ 15. Plaintiff alleges that Eagen and Burge reviewed that Grievance and failed to provide a remedy. Defendants do not challenge the adequacy of Plaintiff's underlying allegations, but rather, assert that Burge and Eagen were not personally involved in the alleged violations. However, Plaintiff has alleged that Burge received, reviewed, and failed to remedy a Grievance. Therefore, he has stated a valid claim for supervisory liability against Burge with respect to those allegations, and it is recommended that the Defendants' Motion be **denied** as to those claims. *See Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. Dec. 6, 2002) ("Personal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise *reviews and responds* to a prisoner's complaint.") (emphasis added and citations omitted).

Conversely, Plaintiff's claims that he "complained" to Kneeland and Burge about all of the alleged constitutional violations that occurred on July 9, 2002, and that they failed to remedy those problems, does not state a valid claim. *Id*. at ¶ 38. Plaintiff has not pled sufficient facts about the circumstances of his complaints to Kneeland and Burge in order to allow them to respond to a claim based on supervisory liability. Specifically, Plaintiff has not alleged the nature or substance of his

complaint, nor whether that complaint was somehow acted on by these Defendants. *See Johnson v. Wright*, 234 F. Supp. 2d at 363. To the extent Plaintiff is stating simply that Kneeland and Burge were aware of the alleged constitutional violations and failed to provide a remedy, that claim must fail. *Id.* at 364 (S.D.N.Y. Dec. 6, 2002) ("Mere awareness of a constitutional violation . . . is insufficient to impose liability."). Therefore, these claims of supervisory liability against Kneeland and Burge are conclusory and fail to state a claim upon which relief can be granted, and it is recommended that they be **dismissed**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Judgment on the Pleadings (Dkt. No. 94) be **GRANTED IN PART** and **DENIED IN PART** in accordance with the above recommendations; and it is further

**RECOMMENDED**, that should the District Court adopt this Report-Recommendation, the Clerk be ordered to dismiss the following Defendants: Amberman, Christopher, Colon, Easterbrook, Kessel, Konecny, Lennox, Leonello, Loomis, Maccucci, McNamara, Melindez, Meyers, R. (C.O.) Miller, Murley, Parmiter, Porten, Quinn, Roux, Sgt. Smith, Wilkinson, and Yorkey; and it is further

**ORDERED**, that Plaintiff's Motion for Sanctions (Dkt. No. 97) is **DENIED**. Defendants, however, should continue to make their responsive documents available for Plaintiff to review and copy at his own expense; and it is further

**ORDERED**, that, to the extent Defendants have not responded to any of Plaintiff's discovery requests, including his Interrogatories to Discover the Identities of Defendants, they are ordered to do so **within thirty (30) days** of the filing date of this Report-Recommendation and Order; and it

is further

**ORDERED**, that the Dispositive Motion deadline is extended to December 28, 2008; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:    September 25, 2008
         Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge