UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**HENRY BENITEZ,**

**Plaintiff,**

        **-v-**　　　　　　　　　　　　　　　　**9:04-CV-423(NAM/RFT)**

**J. LOCASTRO,** *et al.*,

**Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Henry Benitez, 97-A-2553
Upstate Correctional Facility
PO Box 2001
309 Bare Hill Road
Malone, New York 12953
Plaintiff, *pro se*

Hon Eric T. Schneiderman, Attorney General of the State of New York
Timothy P. Mulvey, Esq., Assistant Attorney General
615 Erie Boulevard West, #102
Syracuse, New York 13204
Attorney for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

As set forth in its Memorandum-Decision and Order entered March 29, 2011 (Dkt. No. 162), this Court granted plaintiff's motion (Dkt. No. 145) to serve a second amended complaint; struck all defendants except defendants J. Rourke, Baranska, Covert, Maher, and Conaughty; and ordered "that the case shall proceed solely on the Eighth Amendment excessive force and failure to intervene claims stemming from the events of July 9, 2002, as pleaded in paragraphs 28

through 35, against defendants J. Rourke, Baranska, Covert, Maher, and Conaughty." The Court noted that the issue of exhaustion of remedies remained unresolved.

Defendants then moved (Dkt. No. 165) for a pre-trial evidentiary hearing on the sole question of whether plaintiff exhausted his administrative remedies in connection with the remaining claim. By Memorandum-Decision and Order (Dkt. No. 176), the Court deemed the motion to be one for summary judgment on the ground of failure to exhaust administrative remedies, and set a briefing schedule. Thereafter, defendants filed a summary judgment motion (Dkt. No. 178) addressing the exhaustion issue. This motion is currently pending. Also pending is a motion by defendants (Dkt. No. 183) for reconsideration of the prior Memorandum-Decision and Order (Dkt. No. 176), and requesting an evidentiary hearing on the exhaustion issue. As explained below, the Court denies reconsideration, grants summary judgment in part, and denies it in part.

## THE SUMMARY JUDGMENT MOTION

In their summary judgment motion (Dkt. No. 178), defendants contend that plaintiff failed to exhaust his administrative remedies in connection with the claim that is the subject of this action, and that as a matter of law there is no basis to excuse that failure. Under *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004), an inmate's failure to exhaust may be excused where: (1) administrative remedies were not in fact available to him; (2) defendants waived the defense of failure to exhaust, or should be estopped from using the defense; or (3) special circumstances justify non-exhaustion. Because non-exhaustion is an affirmative defense, defendants bear the burden of adducing competent evidence that administrative remedies were available to plaintiff and that plaintiff nevertheless failed to exhaust them. If defendants carry this burden, the burden

-2-

shifts to plaintiff to present competent evidence of exhaustion, unavailability, estoppel, or special circumstances justifying his failure to exhaust. *See Hemphill*, 380 F.3d at 686; *Murray v. Palmer*, 2010 WL 1235591, *4 (N.D.N.Y. Mar. 31, 2010). Inmates are not entitled to a jury determination on the issue of exhaustion. *See Messa v. Goord*, 652 F.3d 305, 310 (2d Cir. 2011).

In an affidavit (Dkt. No. 137) in opposition to a previous summary judgment motion (Dkt. No. 118) in this case, plaintiff states on the issue of exhaustion:

> 4.    From July 9, 2002 through August 8, 2002, [various corrections officers] ... deliberately denied Benitez, *inter alia*, a pen and writing paper....
>
> 5.    From August 8, 2002 through August 17, 2002 [various corrections officers] ... refused to take Benitez's outgoing mail, including formal grievances ....
>
> 6.    On September 4, 2002, Beniteez provided Auburn C. F. Officer Hnatiw a seven page grievance for mailing to the Clerk of the Inmate Grievance Resolution Committee ("CORC"). That grievance, dated August 9, 2002, relates to Benitez's claims of excessive force [and the] ... cell extraction order....
>
> 7.    Parmiter deliberately elected not to file and process the grievance mentioned in paragraph 6, above.

Magistrate Judge Treece's Report and Recommendation (Dkt. No. 139) addressing the previous summary judgment motion states as follows with respect to the exhaustion issue:

> In response to Defendants' exhaustion argument, Plaintiff asserts that he was unable to exhaust these claims because (1) he was denied a pen and paper from July 9 through August 8, 2002; (2) from August 8-17, 2002, various Defendants refused to submit his outgoing mail and grievances; and (3) on September 4, 2002, he submitted a seven (7) page Grievance concerning the events of July 9th to Officer Hnatiw, but Defendant Parmiter did not process that Grievance in order to obstruct his filing of a federal civil action.
>
> With respect to Plaintiff's first allegation, Defendants have submitted copies of Deprivation Orders indicating that Plaintiff was denied all in-cell property from, at the latest, July 14, 2002, through, at the earliest, July 25, 2002.

-3-

As per Plaintiff's second allegation, the record shows that he filed a Grievance, dated August 17, 2002, complaining that several Defendants refused to take his outgoing mail from August 8-17, 2002. The record also reflects that two of Plaintiff's Grievances, dated August 8, 2002, were not stamped received by the IGRC until August 21, 2002. In one of those Grievances, Plaintiff asserted: "[o]n July 9, 2002, I was forcibly moved from SHU cell G-2 to SHU cell A-1 by an extraction team that, among other things, allegedly broke my glasses," and requested information about the status of the repairs to his broken glasses. That Grievance contains no other allegations concerning the events of July 9.

With respect to Plaintiff's claim that Parmiter refused to process a Grievance he filed on September 4, 2002, there is no evidence presented before us by either side to support or rebut that claim. However, such allegation was arguably raised, albeit with less specificity, in Plaintiff's Amended Complaint: "from August 8, 2002 to September 12, 2002, Parmiter willfully and knowingly wrongly refused to file numerous formal grievances submitted by Benitez."

Considering the above allegations about the obstruction of Plaintiff's grievances, and lack of evidence before us regarding those claims, we find that questions of fact exist with respect to whether the Defendants' own actions inhibited Plaintiff's ability to exhaust available administrative remedies, and therefore, whether they should be estopped from asserting the affirmative defense of failure to exhaust. The record shows that Plaintiff was deprived of all in-cell property for most of July 2002 and, as he points out, DOCS regulations require that grievances be submitted within twenty-one (21) days of the alleged occurrence. N.Y. CODES COMP. R.& REGS, tit. 7, § 705.1(a). Thus, it is possible that even if Plaintiff had filed a grievance after the Deprivation Orders were lifted it may have been denied as untimely. As such, there are also questions as to whether "special circumstances" exist that might justify Plaintiff's failure to exhaust.

(Citations to record omitted.) This Court accepted the Report and Recommendation (Dkt. No. 143).

On the present motion (Dkt. No. 178), defendants argue that summary judgment should be granted dismissing the second amended complaint on the ground of failure to exhaust. They submit the affidavit of Karen Bellamy, Director of the Inmate Grievance Program ("IGP") of the New York State Department of Correctional Services, stating that, among other responsibilities,

she is the custodian of the records maintained by the Central Office Review Committee

("CORC"), the body that renders final administrative decisions under the IGP.  She is also the

custodian of the records maintained by the CORC, and maintains files of grievance appeals to

CORC.  She states: "The CORC computer database contains records of all appeals received from

the facility Inmate Grievance Program Offices and which were heard and decided by CORC since

1990."  She states that she has conducted a search of the database for records of appeals to CORC

of grievances filed by plaintiff, and attaches a copy thereof.

A review of the printout attached to Bellamy's affidavit does not show any grievances

filed by plaintiff between July 9, 2002 and August 19, 2002.  The printout shows eleven

grievances (possibly twelve; the date on one is unclear) filed between August 20, 2002 and

August 23, 2002, the last day of the 45-day period.  Plaintiff filed 23 more between August 23,

2002 and September 12, 2002.  Among these, five were filed on September 4, 2002.

Defendants also submit the affidavit of Cheryl Parmiter, who held the position of Inmate

Grievance Program (IGP) Supervisor at Auburn Correctional Facility ("Auburn") at the times in

question.  She states: "My job duties and responsibilities include intake, processing and record

maintenance for grievances of Auburn inmates."  Her affidavit continues:

> I am advised that the plaintiff, inmate Henry Benitez (97-A-2553), alleges he
> was subjected to excessive force during an unusual incident at Auburn on July
> 9, 2002. I am also advised that inmate Benitez claims he was subject to
> depravation orders until on or about August 17, 2002, that prevented him from
> filing a timely grievance about this incident.
>
> The rules governing inmate grievances require that an inmate must submit a
> complaint within 21 calendar days of an alleged occurrence. 7 NYCRR
> §701.5(a)(l). An inmate may request an exception to the time limit for filing
> a grievance. 7 NYCRR §701.6(g)(1)(i). The IGP supervisor may grant an
> exception to the time limit for filing a grievance based on mitigating
> circumstances; but an exception to the time limit may not be granted if the

-5-

request was made more than 45 days after an alleged occurrence. 7 NYCRR §701.6(g)(l)(i)(a). Further, an inmate may pursue a complaint that an exception to the time limit was denied by filing a separate grievance. 7 NYCRR §701.6(g)(1)(i)(b)(2).

At no time have I ever "deliberately elected not to file and process the grievance" of inmate Benitez, or any other inmate at Auburn, provided they were properly submitted.

DOCS records reflect that my office received at least eleven (11) separate grievances from inmate Benitez during the 45 day period July 9, 2002 and August 23, 2002. Any grievance submitted by inmate Benitez within 45 days of July 9, 2002, which set forth mitigating circumstances why it was not filed within 21 days of the subject incident (e.g., a SHU deprivation order), would have been processed by me.

The record also shows that plaintiff filed another grievance, designated AUB-37630-02, concerning the events of July 9, 2002. That grievance, dated August 8, 2002, was received by the Auburn Inmate Grievance Office on August 21, 2002. It states as follows: "I was forcibly moved from SHU cell G-2 to SHU cell A-1 by an extraction team that, among other things, allegedly broke my glasses." The facility granted the grievance to the extent that plaintiff was seen by the eye doctor on August 15, 2002 and was scheduled to see the optician to select his frames. Plaintiff appealed to the Superintendent, who denied the appeal, and then to CORC, which unanimously accepted it in part on November 6, 2002, noting that replacement eyeglasses had been issued to plaintiff on October 22, 2002 at no expense to plaintiff.

In his affidavit (Dkt. No. 181) in opposition to the instant summary judgment motion, plaintiff states:[1]

> 6.    During the period from July 9, 2002 through August 7, 2002, defendant Rourke, as well as [other corrections officers] ... denied requests made by me to obtain writing implements, *i.e.*, pen, paper,

---

[1] The Court quotes plaintiff's affidavit without noting or correcting errors.

and envelopes.
***

8.    The ... time period within which I was required ... to file a grievance concerning the July 9, 2002 excessive force and failure to intervene events described in the operative amended complaint, had elapsed on July 23, 2002.

9.    On August 8, 2002, I obtained ... a pen, paper, and envelopes from C.O. Crozier.

10.   On August 8, 2002, I drafted a number of grievances.... [None of the listed grievances concerns the excessive force claim in issue here.]

11.   During the period from August 8, 2002 through August 17, 2002, former defendant guards Myers, Loomis, and Miller refused to collect a number of grievances drafted by me on August 9, 2002, including a seven (7) page grievance ("the 7 page grievance") in which I had detailed the events of July 9, 2002 and requested an exception to the 14 days limit for filing a grievance.

12.   The following referenced grievances, which were collected for mailing to the Auburn IGP office during the period from August 8, 2002 through August 30, 2002, were secretly discarded by either SHU guards or IGP personnel: 1) several grievances concerning refusal of former defendants herein to provide me with the SHU in-cell property that had been afforded to me prior to the July 9, 2002 cell extraction process; 2) several grievances about refusal of former defendants therein to provide me with food; 3) several grievances concerning the throwing of urine and dirty mop water on my individual person by former defendants herein; 4) several grievances about the overflowing of toilet and sink water by former defendants herein; and 5) several grievances concerning violent banging of heavy metal objects against the back sheet-metal wall of SHU-A1 cell by former defendants herein.

13.   On September 4, 2002, I delivered to Officer Hnatiw the 7 page grievance for mailing to the IGP office.

14.   I turned over the 7 page grievance to Officer Hnatiw on September 4, 2002, because I had never seen him prior to that date, and because I did not think that Hnatiw would secretly discard the grievance.
***

18.   Cheryl Parmiter did not file and process the 7 page grievance in an effort to prevent me from suing Auburn officials as to the July 9, 2002

-7-

incidents described in that grievance; provided that Officer Hnatiw did not discard the grievance on September 4, 2002.
***

23.  If the superintendent respond to [a grievance concerning employee misconduct meant to annoy, intimidate, or harm an inmate], the grievant must be provided with a form known as "form # 2133", and such form must contain the superintendant's decision on the grievance and a separate section that contain simple direction on how such decision may be appealed to Central Office Review Committee ("CORC").

24.  If the superintendent fails to respond within the 12-day time limit, the grievant may appeal his grievance to CORC by filing a "Notice of Decision to Appeal (Form # 2133)" with the inmate grievance clerk.

25.  The IGP directive in effect in 2002 did not contain directions on how an inmate in a SHU may obtain a "Notice of Decision to Appeal" form (form # 2133) to appeal his/her grievance to CORC in cases where the superintendent fails to timely respond to the grievance.

26.  The IGP directive in effect in 2002 did not indicate whether or not an inmate in a SHU may draft a "Notice of Decision to Appeal" form (form #2133) on plain paper in cases where a standard form (form # 2133 have not been timely transmitted to the inmate.

27.  I did not file a "Notice of Decision to Appeal" form (form #2133) as to the 7 page grievance at issue herein because: a) I was never provided with neither a copy of the grievance nor a copy of a decision on the grievance (form # 2133); b) I did not know in 2002 how to obtain a "Notice of Decision to Appeal" form (form # 2133) in the Auburn SHU; and c) I was transferred to the Upstate C.F. shortly after I delivered the 7 page grievance for mailing to the Auburn IGP office.

28.  Between January 1, 2002 and September 14, 2002, I appealed thirty-nine (39) separate inmate grievances to CORC.

29.  I appealed the 39 grievances to CORC after I received a decision (form # 2133) as to each such grievances.

30.  On September 13, 2002, I was transferred to the SHU at Upstate.

In his opposition papers, plaintiff attaches an affidavit from Amare Selton, who states he was an inmate at Auburn SHU between August 7, 2002 and August 26, 2002. Selton states that

-8-

he witnessed C.O. Crozier deny plaintiff a writing pen; that plaintiff did not have a writing pen until August 8, 2002; and that thereafter, when plaintiff requested an exchange for an "exhausted" writing pen, C.O. Crozier denied it on more than one occasion.  Plaintiff attaches a second affidavit from Selton stating that on October 2, 2002, security staff member Lt. Estabrook asked him if he had witnessed plaintiff making complaints about unlawful disposal of his mail.  Selton states that he replied in the affirmative, explaining that plaintiff had made several complaints in his presence about the unlawful disposal of his mail.

## DISCUSSION

On this record, the Court cannot decide the exhaustion issue without a hearing.  The Court can, however, narrow the issues to be addressed at the hearing, as discussed below.

The first issue raised by the papers concerns plaintiff's allegation that he was prevented from filing the subject grievance prior to August 8, 2002, the date he received a pen, paper, and envelopes for the first time since the July 9, 2002 incident.  Defendants do not dispute this allegation.  Therefore, the Court finds on this record that plaintiff could not have filed this grievance prior to August 8, 2002.

The Court further finds that, after August 8, 2002, plaintiff had adequate writing implements available.  Plaintiff does not dispute this fact.  Indeed, he states that on August 9, 2002 he drafted a number of grievances, including a the subject grievance detailing the events of July 9, 2002 and requesting an extension of time to file the grievance.  The finding that plaintiff had adequate writing implements available after August 8, 2002 is reinforced by the fact that between August 20, 2002 and August 23, 2002, plaintiff filed at least eleven grievances, two of which were dated August 8, 2002.

The record does not, however, enable the Court to determine other issues which bear on whether defendants should be estopped from relying on the defense of non-exhaustion or whether special circumstances justify non-exhaustion.  The record does not enable the Court to determine the truth of plaintiff's allegation that, between August 8, 2002 and August 17, 2002, former defendants Myers, Loomis, and Miller refused to collect a number of grievances plaintiff drafted on August 9, 2002, including the subject grievance.  Nor can the Court determine the truth of plaintiff's allegation that between August 8, 2002 and August 30, 2002, plaintiff delivered to facility personnel numerous grievances (none of which is alleged to concern the excessive force claim in issue here) which were not properly processed, either because they were "secretly discarded" or for some other reason.[2]

The record further presents a question of fact regarding whether, as he alleges, plaintiff delivered the subject grievance to Officer Hnatiw on September 4, 2002.  It also presents a question of credibility regarding plaintiff's explanation for failing to appeal to CORC after failing to receive a timely response to the grievance.

The Court therefore grants defendants' summary judgment motion (Dkt. No. 178) to the extent of narrowing the issues as set forth above, and otherwise denies it on the ground that the remaining issues cannot be resolved without a hearing.  The Court will permit plaintiff to testify from prison, preferably by videoconference if available, otherwise by telephone.  Likewise, if it so desires, the State may arrange for video or telephonic testimony by its witnesses, as long as

---

[2] Although plaintiff does not allege that the subject grievance was among those delivered to facility personnel during this time period, the facility's refusal to process other grievances, if true, could lend support to plaintiff's explanation for waiting to file subject grievance until September 4, 2002, *i.e.*, that he delivered it to Officer Hnatiw, whom he had never seen previously, thinking that Officer Hnatiw would not discard it.

provision is made for plaintiff to hear their testimony and cross-examine them. *See generally Benjamin v. Commissioner of Corr. Dep't*, 375 Fed.Appx. 114, 117 (2d Cir. 2010); *Sease v. Phillips*, 2009 WL 1515114, *1 (S.D.N.Y. May 29, 2009).  The Court notes that, due to the narrowing of the issues, the evidence from Amare Selton that plaintiff did not have writing materials until August 8, 2002 is not relevant; as stated herein, the Court accepts that fact. Moreover, Selton's evidence regarding plaintiff's complaints about unlawful disposal of his mail and Lt. Estabrook's inquiry about the complaints is inadmissible because it is duplicative (*i.e.*, it merely bolsters evidence that plaintiff himself can give), and because it is not probative (*i.e.*, the allegation that plaintiff complained that his mail was discarded is not evidence that it was in fact discarded).

Defendants' motion for summary judgment (Dkt. No. 178) on the issue of exhaustion of remedies is granted in part to the extent that the Court narrows the issues as set forth herein, and otherwise denied, and the Court will schedule an evidentiary hearing.  Defendants' motion to reconsider (Dkt. No. 183) is denied as moot in light of the decision herein.

## CONCLUSION

It is therefore

ORDERED that defendants' motion for summary judgment on the issue of exhaustion of remedies is granted in part to the extent that the Court narrows the issues as set forth herein, and otherwise denied; and it is further

ORDERED that an evidentiary hearing on the issue of exhaustion of remedies will be scheduled in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that defendants' motion to reconsider (Dkt. No. 183) is denied; and it is

-11-

further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

March 26, 2012

Syracuse, New York

Honorable Norman A. Mordue
U.S. District Judge

-12-